Good afternoon. Will counsel identify themselves for the record please and indicate the party you represent and also inform the court of how much time you would like to argue your point and rebuttal if appropriate. The microphone is for recording purposes not for amplification so if you want to be heard in the back of the courtroom speak up. David Novosansky on behalf of Dr. Grundhofer. I would hope for about 10 minutes with the remainder of the time reserved for rebuttal if necessary. Jim Argyonis your honors on behalf of the defendants Dr. John Sorin and Betz Sorin and I would ask for 15 minutes at most. Very well. Mr. Novosansky may I have a second. I'm sorry just a little longer. May it please the court. This case is uncommon in the sense that this court previously heard this matter after the trial court dismissed the cause of the action based on a supposed inability to plead the elements of malicious prosecution. Could you keep your voice up. I'm sorry. Thank you. Yeah. I apologize for just hearing you or I want to go back over it. Do you need me to go back over what I just said? No. No. Go ahead. I'll keep it up. I'm sorry. The issue originally before this court was whether in a malicious prosecution case, particularly this one, first of all the issue of malice or intent was something that could be decided based solely on the credibility of the plaintiffs. In other words, Dr. Goldhofer, frankly, had no basis and no reason, short of telepathy, to get in the minds of the servants to see what motivated. This court specifically stated that's an issue of credibility to be resolved by a trier effect, not resolved by the court as a matter of law. The second issue was wrongful whether or not there was a favorable termination. We believe there was here, as this court noted, when the case was originally dismissed. They've not brought this case was dismissed. It was dismissed without prejudice, but it was not refiled within one year afterwards. Under the Cale decision, which I'm unfortunately familiar with firsthand, the Supreme Court said in order of voluntarily dismissing the case, it's not final until the refiling period has passed. I don't know that it's one year. The third element was whether or not Dr. Goldhofer could prove damages. As this court pointed out, unlike a normal malicious prosecution case, a doctor or other professional who is sued does not have to prove special damages. We agree that malicious prosecution requires proof of malicious, I'm sorry, special damages. In the event of a medical malpractice case, however, the legislature has said you don't have to prove special damages. The nature and extent of what Dr. Goldhofer suffered is another issue for the jury. She may not prove special damages, however, does she not need to establish that element when a motion for summary judgment is presented? Our position, sir, is she did, by establishing the fact of the lawsuit, she provided deposition testimony, including expert testimony, saying the fact of this lawsuit would remain with her for the rest of her career. Dr. Goldhofer is an anesthesiologist. We brought in an expert who ran several anesthesiology practices. Now, Dr. Goldhofer's position was if I was asked a question, I'd respond honestly. Dr. Atkins, the expert, said if I had two equally qualified candidates, one of them had not been sued for malpractice, one of them had been, I would take the equally qualified candidate without the lawsuit as big. Isn't that the definition of speculative? Isn't that fully speculative as opposed to if something in the future were to happen, this would happen? That sounds a bit speculative. Well, perhaps, except here's the problem. When you're dealing with a professional, do the damages manifest themselves immediately or do they have an existing harm at that point? When the lawsuit was filed, and by the way, one point of correction, Dr. Goldhofer was working for a hospital at the time, did not have separate coverage. Her statement was I didn't report it to my carrier, she didn't have one, but presumed that the hospital had. But it turned out not to be true. Well, we don't know if the hospital, we know she didn't report it, but we have no knowledge whether the hospital reported it. When we inquired, we were told it was confidential and they can't go into it under. So there's no evidence in the record that it was reported? No. No, there is no evidence. No, I apologize. No, there is no evidence. And again, the problem there becomes credibility. Did Dr. Goldhofer have a reasonable belief that it had been reported? Very respectfully, Your Honor, the question is not perhaps whether it was reported. Dr. Goldhofer said I have an obligation to be truthful. Now, any employer being told that you've had a malpractice case brought against you is going to harbor some doubt as to whether or not this is an appropriate candidate to bring into the practice. You know, how much of a stain it was, I don't know. Nobody can. Justice Harris, you're correct. It is something in the future. We don't know what impact it had. We will never have knowledge unless somebody looked her in the eye when she was trying to be hired and said, you got sued for malpractice. I don't want somebody in my group. We brought in an expert who opined based on longstanding knowledge. He ran these groups. He was the one who selected their employees, their anesthesiologists. It was very clear that that would be a major deciding factor, not only in his practice, but any other anesthesiologist's practice. So to the extent that I can look you in the eye and say, oh, it caused her X number of dollars of damage? No. I don't think anyone can. And that's something unique with a medical malpractice, I guess, or a legal malpractice action. The harm is triggered when the case is filed without probable cause or for malicious reasons. The damages that flow, and I think that's why the legislature very specifically in the statute, which I believe was quoted in the opinion, said we want to discourage this type of conduct, in other words, these lawsuits. Therefore, we do not require a plaintiff to plead or prove, that's the critical two words, or prove special damages. Now, at the same time, whether the compensatory damages in the malicious prosecution action are not the criteria. In fact, much of what would normally be compensatory damages is not properly within the scope of the action. So we have an action that requires pleading and pleading of malicious prosecution with this caveat, where the legislature and the courts later accepted the fact that given the decision to sue a medical professional, that in itself gives rise to a presumption. I agree it's a presumption only, but a presumption must be rebutted by affirmative proof to the contrary. Here, if you look at the summary judgment. Affirmative proof to the contrary, meaning affirmative proof that she wasn't damaged? It would be an affirmative defense, I believe. It's a little muddy here. There isn't a whole lot of law on. So it sounds like your position is the statute says you can file a malicious prosecution case in the underlying medical malpractice proceeding, but you don't have to prove, according to the statute, allege or prove special damages. Correct, sir. Do you have to allege or prove any damages? My reading of that, and if I'm wrong, it's an issue for the court to decide because I couldn't find anything. The cases that have attacked malicious prosecution against the medical practitioner go back, as this Court did, and point out that on the element of special damages, which is normally a required proof, the legislature said the fact that you were sued itself gives rise to a presumption. Now, like any other presumption, it can say. Is that a case that says that? Well, if you don't have to prove it, it would be a presumption, in my opinion. I can't say the case. I know that's your opinion, but do you have a case that supports your opinion? No, sir, and I couldn't find a case to the contrary. The cases I have found all say when a decision was made that, okay, you haven't proven this element, the courts would have considered it, as this Court did initially, said, well, you know, that's not a requirement of your pleading or proof because the statute says you don't have to plead or prove. So do you think the legislature intended on allowing a malicious prosecution case from an underlying malpractice case where there are no damages? They allow for the filing of the lawsuit, and you don't have to allege or prove any damages. Well, I mean, that doesn't really make a lot of sense. Very respectfully, and, you know, we both have our opinions. The problem with that, if the legislature says you don't have to prove it.  Correct. Allege or prove. This is clear evidence. You think they intended on allowing the creation of a lawsuit where you don't have to prove any damages or allege any damages? I think what they were trying to do was create a presumption that can be overcome like any other presumption by the party defending. That's what they did here. They created otherwise, I mean, look, I'm not the legislature. So the party defending would have to prove a negative? Would be able to. Did you lose business? No. That's what they argued here. She got more money later because she was a student at the time or in turn it's a slightly different in the federal field. If she got a job, that's her argument. When you got a job, you no longer have damages because it didn't hurt you. If we analyze it backwards for a second, I hope I'm making sense here. The legislature says you do not have to prove special damages. The party moves for summary judgment or dismiss as they did here saying you haven't alleged and articulated your special damages. Illinois, while it's a fact-cleaving jurisdiction, it's not a notice-cleaving jurisdiction. The original motion to dismiss said, look, you haven't alleged any of these elements and the case should be dismissed. The trial judge agreed. So now we have the legislature which says you don't need to prove it. So then what we've transformed is a statute that, frankly, the court would be construing out of existence because if you only have to prove it, and as here a defendant comes in and says, well, you didn't prove it, therefore I win. That becomes a carve-out without meaning. In other words, the doctor is going to have to prove it in responding to a motion of summary judgment. But they only refer to special damages. And ordinarily, wouldn't the damages be the cost of defense, that those would be recoverable if she'd ever been served and had to defend, which she never did in this case, right? I have to go back. I'll be honest. It's been quite a while since I put this together. And although supposedly my brain hasn't been damaged sometimes short-term, well, actually not short-term, interesting enough, long-term, which is both a curse and a blessing. There are things in my life I don't want to remember. At the same time, I don't remember a lot of my children's younger years, which is something I'm living with. The alternative was not something I would have preferred at all. However, the primary issue in a malicious prosecution case would not simply be the attorney's fees. It may be an element. Here, like most cases where you're a plaintiff in a damage case, the attorney's fees aren't an element because they're normally contingent. And my recollection is you can't recover attorney's fees if they haven't actually been paid. So like most doctors suing in a malicious prosecution case, if there are attorney's fees or costs, they would be minimal. The legislature looked more at the impact on the doctor's reputation and the doctor's ability to prosper in the future. And I agree with the court. There is no case out there that looks at this issue specifically that I found. My research may be bad. The court may have found one. My opponent didn't cite one. He's a good lawyer. So we have made perhaps a case of first impression, which is always the curse of any court. What do you do when the legislature very clearly says you don't have to prove this element? They take that element out of malicious prosecution. The defendant says, okay, well, you haven't proved it. I want judgment. That then puts the element right back in. So I assume it's like other presumptions, not particularly this one, but normally when there is a presumption in favor of a plaintiff, the turnaround is the defendant rebuts the presumption. Here the presumption was in theory rebutted by saying you didn't prove special damages. I'm positive. I'm not trying to be simplistic, but I don't want to keep beating the same drum. That would be my position. Do I have a position? Well, this is your position, actually, that she need not prove damages, but you're also saying she need not present any factual basis for damages that would entitle her to judgment. Not quite. What I'm saying here is she has a presumption in her favor. She did offer some evidence of damages. What was that? The expert testimony and her statements about the fact that she believed it would impair her ability to obtain a job or a greater job in the future, which goes to any medical malpractice organization. But isn't that speculative? Very speculative. Is she present anything else that might be considered damages? Not in a concrete manner. And we come back to the same thing. Not in a concrete manner. No, there is nothing saying I lost X number of dollars. The question was asked by the defendant, well, you're making more money now, which is true. When you're a resident or an intern, they pay you slave wages. I did that to my relatives. Then you go and get a job that is substantially more remunerative. So under that theory, she suffered no financial loss. And the court is correct. It is virtually impossible short of a series of rejections saying you can't find work. If there was a series of rejections saying we don't hire you, you got sued for malpractice, it would be a much easier task to prove. So the question becomes here, can you prove it? In other words, we're now changing malicious prosecution to say, I think I said it in the brief, if you don't manage to get totally destroyed, in other words, you found a job, therefore there's no proof of special damages. Or we argue about the nature and extent, which would require a jury to speculate. I think it's an issue of fact for a jury rather than a pleading hurdle, because what we've done now is made it a proof hurdle. You have to bring in some evidence of special damages in order to proceed with your case. It's very little different than the original question of do you have to prove it and you have the two words of legislation, I'm sorry, plead it, I apologize. Then there's two words that I think the court has pointed to, or prove. Well, if you don't have to prove it and you don't, then what sense does the legislation make? Because at that point, you're going to have, in 90% of the cases, you're going to have no cause of action at all. The legislature said the fact that these are being filed is the public policy of the state of Illinois wants to discourage them. So therefore, we're taking the burden off the physician or other medical professional and putting it on the defendant. Now, you can overcome the presumption, but you're going to have to show that you have overcome the presumption. Here, all we did was say, well, she wasn't able to say this, therefore, we win. We've overcome the presumption. And again, I'm not trying to be flip, but it's fairly straightforward. It is not an easy – I'm not saying the court has a slam dunk or you can write an opinion either way. It's a bit on the murky side. On one hand, you have the statute. On the other hand, the court is correct. We don't like to encourage speculative evidence. But I think the legislature may have already created a conundrum, if you will, that any plaintiff is going to have a problem with. I know I've taken up my time, so if the court has other questions, I'll reserve my time for rebuttal. Thank you. Mr. Arzionis. Thank you, Your Honors. May it please the Court, Counsel. Your Honors, there are several points I wanted to hit, but I'll get to the damages portion that Your Honors were talking about. In this particular statute that we're talking about, malicious prosecution medical malpractice, specifically states that the plaintiff need not plead or prove special injury to sustain his or her cause of action. Then it goes on to say, in all such cases alleging malicious prosecution, no exemplary or punitive damages shall be allowed. So it specifically says they don't need to plead or prove the special damages. It doesn't give them a pass on actual damages. And for all the cases regarding defamation per se and defamation per quad, there's a whole slew of cases talking about when you need to plead special damages and when you don't need to plead them. This is a particular case where they said special damages don't need to be pled, but actual damages pursuant to the elements of malicious prosecution, which I wanted to get into briefly because I don't believe there was, on four of the five, there wasn't any evidence presented. But one of the elements you still need to prove is damages. And here all we have is some speculative there's a potential that an employer is going to hold it against Dr. Grundhofer. I questioned her during her deposition, was there an actual employer that did that? And she said no, she was just presuming that someone's going to do that to her. That's not the way damages work. As Your Honor stated up here, that's speculative and speculative damages are not allowed and they're disallowed, specifically disallowed. She would have had to come up or her expert would have had to come up with an actual instance where she was denied some kind of position or some kind of benefit and then somehow quantify that too and determine whether there was damages there. That didn't happen. It was all hypothetical. And also regarding Justice McVeigh brought up about whether the case was ever the wrongful death, the underlying case was ever served on her. Summons was never issued and it was voluntarily dismissed before summons was ever issued so it was never served and the case went away without any defense costs. And am I right that defense costs can be damages in usual malicious prosecution case if you read the other evidence? Correct and you are correct, Your Honor, because normally the distinction all the defamation cases have between special damages and ordinary damages, they say when you need to plead special damages, higher standard, it's not the ordinary expenses of defending the suit. You're correct, Your Honor, but here we have no evidence of any of that and that's where we're getting back to the thrust of this. This was a Celotex type of motion. My opponent keeps bringing up that we had some kind of burden to bring forward. The burden that we had bringing this type of motion is that a defendant who moves for summary judgment may satisfy his or her burden by one, affirmatively showing that some element of the case must be resolved in defendant's favor, that's not the type of motion we filed, or two, establishing that the plaintiff cannot prove an essential element of the cause of action. What happens in that type of motion is that the defendant just need demonstrate that the plaintiff had a full opportunity at discovery, which happened here, discovery was closed, we went through it, we had experts and all of that, and then that there lacks evidence to establish an essential element. Under that scenario, the burden then shifts to the plaintiff to present evidence to show a genuine issue of material fact. We would have thought under that scenario that the appellate brief or the response to my motion for summary judgment would have been strewn with all kinds of evidence of the elements here for a malicious prosecution case. What happened here, that just didn't happen. We didn't get any evidence, and I think the court appropriately saw that and granted the summary judgment motion. To get back to the elements, malicious prosecution, the statute that we talked about didn't change the elements for malicious prosecution count. Those are the institution of civil proceedings by defendants. We're giving you that one. But the other four is where we're saying there was no evidence. The second one is termination of such proceedings in favor of plaintiff, and that gets into the cult awareness case, which my opponent disregards. I'll get to that in a minute. The absence of probable cause for the proceedings, malice on the part of the defendants in bringing such proceedings, and number five, damages as a result of such action. Those are the elements, and when you analyze the four or the five, there was just nothing set forward by the plaintiff here that would even establish a situation where credibility could be weighed. To weigh credibility, you need something on both sides. We're saying there was nothing on this side, therefore there's nothing to go to trial. To backtrack a little bit, my opponent was discussing the prior appellate opinion that ruled on the sufficiency of the pleadings. It was a 615, and the appellate court said that the pleading was sufficient to go forward. It doesn't negate our ability to bring a summary judgment motion if after all discovery is closed there's no evidence to support that allegation. The plaintiff just can't rely on the allegation and needs to bring forth something affirmatively. So I think the argument that that was somehow law of the case, and we cited the cases in our briefs, is not appropriate here because it was prior to discovery and post-discovery we presented how the plaintiff just hasn't satisfied the elements. The first element that I wanted to run through briefly is the absence of probable cause. That element talks about the failure to prove lack of probable cause to file legal proceedings is fatal to a claim. It's defined as a state of facts as would lead a person of ordinary caution and prudence to believe that he has a justiciable claim to prosecute against the defendant. Further, the cases talk about a mistake or error that is not grossly negligent, will not affect the question of probable cause when there is an honest belief that the accused is probably guilty of the offense. Additionally, the reliance on advice of an attorney, which we have in this situation, before initiating the lawsuit is a valid defense to malicious prosecution claim. Here, when the plaintiff was questioned during discovery, why she felt that there was lack of probable cause or why she felt that there was a bad motive for the Sorens to bring this lawsuit against her, all we received back was that she was presuming, it was under presumptions and assumptions. Answers to discovery told us the plaintiff is relying on the presumption that the Sorens spoke directly to the Sun-Times and brought the case to the media. Also questioned, because the appellate court in the initial ruling had stated that they felt they should allow discovery on a probable cause element, is that maybe the Sorens were using this wrongful death action for some kind of leverage in the probate proceeding that was going on. Well, I think that really goes more to malice. But in your brief, you act as though the underlying lawsuit was blaming her for her husband's death. But what you allege in the prior lawsuit, not you personally, but what your clients alleged was that she prescribed Ambien to the decedent. And in fact, discovery indicated that perhaps it wasn't her that prescribed the Ambien to the decedent. Perhaps it was your client who prescribed the Ambien, correct? So that does create a question. The fact is whether there was probable cause to allege she was the one who prescribed the Ambien. Well, the probable cause is that she was a physician. She was living with him at the time. Dr. Soren did. He admitted in his depositions that he had prescribed Ambien to his son. But what he lacked is information that his son was having any side effects to the Ambien. And when they found out post-death that when Dr. Brunhofer was living with them, she started bringing up that there were these incidents of sleepwalking, and maybe there was some connection to Ambien. At that time, what the Sorens believed is, why didn't you bring this to us when he was still alive? Had you brought this to us when he was alive, you're a doctor, I'm a doctor, we would have found a way to figure this out. In addition, the other evidence that supports that there was probable cause for this is that the Sorens, trying to figure out what happened to their son, they hired a private investigator to try to investigate and figure this out. Part of the investigator's report, which was raised in discovery, was that he found Ambien was hidden under the mattress of the bed. I get all that. But does none of that suggest a probable cause to believe that she prescribed the Ambien, which is the essence of the malpractice thing, that she had properly prescribed something to her husband. I guess I don't. And I suppose by not just the prescription actually writing the script, which I admit there was no evidence of that. I believe they tried to subpoena some records from some local pharmacies and they came up dry given the time period that this had occurred. We don't have the prescription bottle. There's a picture of it in an investigator's report. You really can't see from the picture as to which doctor prescribed it. But regardless of whether she actually wrote the script, she was living with him, she saw the effects of it that was going on, and she as a doctor had the ability to stop it or to say, you know, and maybe she was trying to stop it is what they're saying by hiding the bottle. And what the Grundhoffers had an honest belief, after consulting with a litigator who had been practicing for many years, that there was a potential wrongful death lawsuit here against Dr. Grundhoffer. There was a statute of limitations that was about to run. The lawyer was about to go in for chemotherapy and he said, you know, let's file this. If you honestly want to pursue it, let's file it and get it unfiled before I have to go in for my chemo. So it was filed literally I believe it was two months before the statute of limitations was run. And all of that, while it's not, again, under a Solotex type of motion, it's not a burden to present the evidence. I think the evidence is there that there was probable cause. But under the shifting where we shift back to them, what evidence do you have for the lack of probable cause on it? And she didn't present anything but speculation here. And that's where we don't have my opponent questioned, well, what could there have come up? Was it telepathy? We're not saying telepathy. But sometimes there's an admission by a party. Sometimes there's some kind of act inconsistent with an honest belief. Sometimes there's some kind of record that was created. We had none of that here. And under the Solotex type of motion, we're allowed to and we did ask the court to grant the summary judgment. It's specifically the type of case where there's no evidence on the one side that summary judgments were made for to alleviate the courts and the burden and to not waste the jury's time on something where there's nothing to weigh, that would presumably be done on a directed verdict and shouldn't even go that far and empanel the jury. So this is that particular case. Can you briefly address the termination of proceedings in your favor, Your Honor? Yes. Absolutely, Your Honor. So the controlling case there, and while counsel was citing generic case law as to a voluntary dismissal, the Cult Awareness Network v. Church of Scientology case adopted the restatement approach specifically regarding whether there's a termination in favor of the plant for a malicious prosecution count. And what that court had said, a favorable termination is limited to only those legal dispositions that give rise to an inference of lack of probable cause. So you can't just say it was voluntarily dismissed. You need to show that it was voluntarily dismissed because there was some kind of lack of probable cause here and that they did it because of that. And there's several cases that we cited there that support that proposition. That's the controlling law on the favorable termination element here. So it can't be a voluntary dismissal, but it has to be under circumstances that give rise to that. Exactly, Your Honor. And what we're saying here is that there's no evidence to suggest that here, and therefore the court was right in granting a summary judgment on that element also. But she could prevail on that notwithstanding that you voluntarily dismissed it, but you'd have to show something beyond the voluntary dismissal. That's exactly right, and that's what the Cult Awareness Court says. And it says, for instance, if it was dismissed or settled, you know, pursuant to technical reasons or procedural grounds, that's not going to be a favorable termination. It needs to be something more, and you need to demonstrate that there was some kind of lack of probable cause there. And since there wasn't any evidence of that, that element she failed to support in summary judgment was proper. And for the malicious prosecution count, all the court had to find was one of the elements was not satisfied. Here we already talked about damages, the probable cause, termination in favor, and there's one other one I wanted to cover. The malice, which is, as Your Honor stated, they are somewhat overlapping. But again, we didn't have any affirmative evidence of malice that was presented by the plaintiffs here. Again, there was no party admission. There was no statement. We need some competent, admissible evidence to support these elements. All we received during discovery, both written and oral, were speculation and supposition by the plaintiff as to what occurred or what may have occurred. And then when you take that and you look at what the actual facts were in terms of what these parents were dealing with regarding the death of their son and all of the facts that they had, including the lawyer's advice, I think the court properly granted summary judgment here. And we ask that that ruling be affirmed, Your Honors. Very well, thank you. Mr. Novoselsky? Sometimes when you listen, you learn. Counsel just advised the court that the reason they chose not to file it again was because a lawyer told them, look, there's a statute running, I'm going to be ill, so I'm going to be out of the picture. Let's go ahead and file it. We can decide later whether we want to proceed with it. That is not consistent or at least creates an issue of fact as to motivation. It wasn't we filed it because at the time we filed it, we had a reasonable basis to believe something. It was done as a prophylactic measure. And if that's an adequate defense to a frivolous malpractice case, this one was particularly frivolous, then I think, again, we've just made the entire law of malicious prosecution disappear. The question becomes what is a reasonable belief, either for malice or probable cause. And, again, I come back to what I said. You have to get inside the mind of the people who decided to do it. And I think, as the opinion correctly points out, it's also an issue of credibility, which is for a trier of fact, not for a court. Here it becomes even more interesting. Consul alluded to their investigation on the Ambien. It was pointed out below. Number one, Dr. Brimwaffle, as a resident, could not prescribe. She didn't have prescription rights. Second, the discovery showed that the actual prescriptions themselves came from Dr. Soren. Now, what we heard today, which is what I wanted to point out, was, well, she should have stopped it because the Sorens didn't know it was creating problems. That's not consistent. Number one, a physician may not prescribe for a few weeks, which is what a jury could have considered. There's no question about that. That's under Illinois law. It's under the Code of Conduct for a physician. Second, we did get the prescriptions. Those did turn up from some of the pharmacies, and Dr. Soren acknowledged it. Dr. Soren acknowledged that his son had a medical condition that he was trying to treat. Now what we're hearing is, well, they had a reasonable belief to presume that she was prescribing it, and Justice Bixler pointed that out. That was the allegation of the complaint. You are prescribing Ambien to our son. That led to his death. These people had no reason. It was a shot in the dark at best, and then the jury should look at the fact that here is the exact allegation made by somebody who was himself prescribing the drug that he said led to his son's death. Again, does it prove our case? It gets it to a jury. The next question, which keeps coming back, is the issue of damages. Malicious prosecution does not permit recovery for anything other than special damages. The statute also said no punitive damages simply to simulate an action against the lawyer for malpractice. Well, if you eliminate special damages, which the legislature says you do not have to prove, you eliminate punitive damages in the same statute, what damages were to be proven? Compensatory? No. Not at all. You can't get that under malicious. It has to be special damages. And what we're now being told is, yes, the legislature has taken that element out of the case completely. But you still have to prove it. And you didn't prove it, therefore you get judgment. I don't have a case right on point because, frankly, I've never seen that before. And is it a presumption? I believe it is. I can't give you a case right on point, Judge. I really can't. So what we're dealing with here is a lawsuit that should have never been filed. And how do you sue somebody for doing what you did? Again, a jury question. You have this recovery limited to special damages when the legislature has said you don't have to prove it. Wrongful federal termination? This isn't a favorable termination in the cult awareness sense. It is a, again, today they said, well, we filed the lawsuit to see if we could come up with evidence, and we chose not to. Once the one year passed under Kale, it becomes a final decision on the merits because we cited the statute. Unless Codd says correct, unless it's a procedural issue, it is presumed to be on the merits. Well, it's a final resolution in the respect that it cannot be refiled. Correct. It does not represent a resolution that says the plaintiff won or the defendant. So it's a termination of the cause of action. It cannot be filed. So I struggle with the notion that it's a favorable determination in favor of the defendant. May I do what I've been told I really shouldn't do and answer a question with a question? Go ahead. Yeah, I was feeling good. I know. Go ahead. If you have to actually prove a favorable result, you are never going to have a case short of a decision by a jury or a court ruling in somebody's favor. Then you never have a favorable termination in that sense. Your Honor is correct. It would be very nice if some judge on this case would have said this is a silly, frivolous lawsuit. So what we're doing is now, again, I hate to sound like it, we're going back to the legislature. We want to discourage doing this. What we're now being told is we can file as many silly, frivolous, malicious lawsuits as we want, and then we pull the plug before it comes to a decision before the trial court. And we're immune from doing it. You have just undercut the legislature's position. We want to stop these filings. There's no way you can construe the rivalries other than since we chose, and that's for a jury too, did you choose, was it a favorable termination? If under the circumstances it was, which would say you admit you just filed it to stop a clock. You could have done it just to punish her. That's a fair question. We chose to withdraw it, but, and again, cultural awareness talks about technical issues, withdrawing for proceedings, you know, issues that don't lend themselves to a disposition on the merits. We do know that you couldn't refile it. And they never withdrew from the position. They're still arguing they had a reasonable basis to assume their daughter-in-law caused the death of their son. It's still here. So I don't have an answer other than to answer the question. Because that's the defense to your lawsuit. They can raise it as a defense, but now they're saying we don't have to. You want to penalize them for raising the defense that you claim is inappropriate on the other side of the spectrum. In any event, do you have anything else you'd like to say? Well, I'm not going to respond to that, but I don't know that it's necessary. That's what really is going on here. Our position is you have to assume we did it for reasonable and innocent purposes. And that's our defense. But the plaintiff doesn't get to go anywhere because they have to establish we weren't malicious. And that's an issue of fact. And in medical malpractice, it's a particular issue of fact. Because of legislative history and everything else, we do want to discourage these. Just like against a lawyer. It's nice to be a lawyer because, in theory, you don't get hit for malicious prosecution. You don't get hit for punitive damages. It's a decision by the legislative professional. In order to practice properly in serving the public, you have to have certain protections. Thank you very much. Thank you. I'd ask the Court to reverse. Very well. On behalf of the panel, we would thank the attorneys for their briefing and argument on this issue. We'll take the matter under advisement. The Court stands in recess.